HOWARD WHITNEY, SHERIFF, v. GRETNA STATE BANK.

FILED JANUARY 19, 1897.   No. 7016.

1. **Partnership: EVIDENCE OF MEMBERSHIP.** The receipt by a party of a share of the profits of a venture merely as compensation for services, such party having no interest in the property made the subject of the venture and no power in the management or control of such property other than that of an ordinary retail salesman thereof, does not constitute such person a partner. *Ætna Ins. Co. v. Bank of Wilcox*, 48 Neb., 544, followed.

2. **Rejected Evidence: HARMLESS ERROR.** It is not reversible error for a court to reject an offer of competent and relevant evidence if the evidence rejected, when considered with all other evidence bearing on the issue to which it was directed, would not support the conclusion sought to be established by the rejected evidence.

ERROR from the district court of Sarpy county. Tried below before KEYSOR, J. *Affirmed.*

*Charles B. Keller* and *Clinton N. Powell*, for plaintiff in error.

*Gregory, Day & Day*, contra.

RAGAN, C.

This is an action in replevin for a stock of goods, brought in the district court of Sarpy county by the

Gretna State Bank against Howard Whitney, sheriff of said county. The bank's claim was that the goods belonged to A. U. Hancock; that he became indebted to it, the bank, in a large sum of money and pledged the goods by chattel mortgage to it to secure his debt. The sheriff claimed that the goods, after and before the making of the bank's mortgage, were the property of A. U. Hancock and S. E. Wolverton; that these two parties were copartners; that he had seized the goods as theirs by virtue of certain attachments issued at the instance of their creditors. The case was tried to the court without a jury, a finding and judgment rendered in favor of the bank, and the sheriff prosecutes here a petition in error.

1. It is insisted that the finding of the court that the mortgaged property was the individual property of A. U. Hancock and that Hancock and Wolverton were not copartners is not supported by sufficient evidence. The evidence shows without substantial conflict that Hancock established a general store at Gretna, Nebraska; that he furnished all the capital that went into that business; that Wolverton never furnished any capital for the venture; that Hancock employed Wolverton to conduct the store, and in lieu of a salary promised to pay him as compensation for his services "a living out of the business," and if the venture proved profitable, one-half of the profits. The evidence further discloses that Wolverton took charge of the store and conducted the business under this agreement as clerk and manager; that he and Hancock held themselves out to the world as copartners, and on their letter-heads they designated themselves as A. U. Hancock & Co.; that in their reports to commercial agencies they held themselves out as copartners and that the creditors represented by the sheriff in this suit believed they were copartners, and relying upon that gave them credit. If this was an action by some creditor of Hancock & Co. against Hancock & Wolverton to recover a debt for goods he had sold them, relying upon the fact that they were copart-

ners, we have not the slightest doubt but that Hancock
& Wolverton, by reason of their conduct, would be es-
topped as against such creditor from asserting that they
were not in fact copartners.   But this is not the case be-
fore us.   The question presented to us is:  Were these
men in fact copartners?  Was the property involved in
this action copartnership property or was it the property
of Hancock?  The relation of copartners rests in con-
tract.   Whether two or more persons are copartners de-
pends upon intention, and while a copartnership may be
established by the course of dealing and the conduct of
the parties, and perhaps by the admission of each mem-
ber thereof, still the relation, if it exists, must rest in the
consent and the intention of the parties thereto.   It is
sometimes said in the books that parties, by their course
of dealing, may make themselves partners as to creditors
notwithstanding they were not in fact partners; but this
expression is not strictly accurate.   An examination of
all those cases, we think, will show that where parties
who were not partners have, nevertheless, been held lia-
ble as such, they were so held liable because by their
conduct they had estopped themselves from averring that
they were not partners; but in no case that I have been
able to find has any court assumed to hold that two or
more persons were copartners as a matter of law when
the persons had never agreed or intended to become such.
The fact that Wolverton was to receive as compensation
his living from the business and was to receive a share
of the profits of the venture if it should prove profitable,
would not alone support a finding that Wolverton and
Hancock were copartners.   It takes more than that to
constitute a copartnership.   Wolverton had no interest
in the subject-matter of the venture.   He had no power
in the management or control of this venture other than
that of an ordinary retail salesman.  In *Ætna Ins. Co. v.
Bank of Wilcox*, 48 Neb., 544, the precise question pre-
sented here was decided and the court held:  "The re-
ceipt by a party of a share of the profits of a venture

merely as compensation for services, such party having no interest in the property made the subject of the venture, and no power in the management or control of such property other than that of an ordinary retail salesman thereof, does not constitute such person a partner." The decision in this last case followed *Waggoner v. First Nat. Bank of Creighton*, 43 Neb., 84, and *Gibson v. Smith*, 31 Neb., 354. We have been to some pains to re-examine this question, and we are satisfied that the rule announced in the cases referred to is supported by the great weight of authority.

2. The mortgage in controversy was filed and possession of the goods taken by the bank on the 17th of October, 1891. On the 19th of that month Wolverton wrote to one of the creditors represented by the sheriff here the following letter:

"GENTLEMEN: Yours of the 19th at hand and would say that our affairs are in the hands of a bank receiver. Everything is out of our control. Mr. Hancock's individual liabilities were so large that he had to mortgage everything that he had to the bank."

On the trial counsel for the sheriff offered to read this letter in evidence. The court rejected the offer and it is now insisted that this action of the court was erroneous. Treating this letter as a declaration and admission by Wolverton that he and Hancock were partners and that it was competent and relevant evidence,—a point not decided,—we are clearly of opinion that the plaintiff in error was not prejudiced by the court refusing to consider this letter in evidence, for the reason that if the letter be considered in evidence with all the other evidence bearing on the issue to which it was directed, the court would still not have been justified in finding that Wolverton and Hancock were copartners.

3. On the trial of the case the books of account used at the Hancock store were brought into court by a subpoena. These books, at the request of the sheriff, were examined by a gentleman and he was then called as a

witness and the sheriff offered to prove by him that he had examined the books and that the account therein between Hancock & Co. and the bank did not show any entry with reference to a note which Hancock claimed he had sold to the bank; and that the books did not show that the money which it was claimed the bank had furnished to Hancock on the note discounted went into the business of the store. The refusal of the court to permit this testimony to be given is the final assignment of error argued here. We think the evidence offered was wholly immaterial. It did not tend to prove or disprove any issue being litigated. If Hancock discounted a note at the bank and neglected to make memoranda thereof on his account books the absence of such memoranda would not tend to prove that the bank had not discounted the note; and certainly the bank was under no obligation in this case to see that Hancock appropriated the money loaned to him towards the conduct of the store. The judgment of the district court is right and is

AFFIRMED.