MARIE HURST, ADMINISTRATRIX, APPELLANT, V. HAYDEN
BROTHERS ET AL., APPELLEES.

FILED DECEMBER 4, 1913. No. 17,405.

1. **Partnership, Evidence of.** Evidence examined and set out in the
opinion *held* insufficient to show a partnership between the
defendants.

2. **Negligence, Evidence of.** Evidence examined and set out in the
opinion *held* insufficient to establish actionable negligence against
either of the defendants.

APPEAL from the district court for Douglas county:
WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Weaver & Giller,* for appellant.

*Greene, Breckenridge, Gurley & Woodrough, John M.
Macfarland, Charles E. Foster* and *A. J. Kinnersley,*
*contra.*

FAWCETT, J.

Plaintiff, as administratix of the estate of Thomas Hurst,
deceased, brought suit in the district court for Douglas
county, against Hayden Brothers, a corporation, and
Martin Reum, an individual, to recover damages by rea-
son of the death of her husband, as the result of alleged
negligence of the defendants. From a directed verdict in
favor of the defendants and a judgment thereon, plaintiff
appeals.

The petition alleges that Hayden Brothers Company
operated a large retail department store in the city of
Omaha; that the meat department in its store is managed
and operated by defendant Reum; that there exists be-
tween the defendants "some sort of a partnership agree-
ment as to the profits arising from said meat department;
that Hayden Brothers furnish the room, lights, elevator
service, janitor service, and some of the help in said de-
partment, and furnish a portion of the advertising for

said meat department; that Hayden Brothers and said Martin Reum each receive a portion of the receipts from said meat department and are partners in said business." It is then alleged that the decedent during his lifetime was an employee of defendants in the meat department as a salesman; that in the course of his employment as such salesman it became necessary for him to enter a room, belonging to the defendant Hayden Brothers, and adjoining the general salesroom of the meat department, for the purpose of replenishing his stock of supplies; that the room referred to is a narrow room about 30 or 40 feet long and 10 or 12 feet wide, and is supplied with only one light of a very small candle power; that, while so engaged, the decedent "stepped upon a nail which was sticking up through a board, which said board had been previously removed from some of the boxes of supplies, and the nail thus stepped upon by said Hurst penetrated his foot, causing tetanus, and death resulted therefrom a few days thereafter;" that defendants and each of them were negligent, in failing to provide decedent a safe place in which to perform his work; in failing to provide a room or place where refuse boards and other refuse matter could be kept separately from the supply-room; in failing to have the nails removed from the boards as they were taken from the boxes; in failing to furnish sufficient light for the supply-room where the employees were compelled to go to get supplies; in failing to keep the room properly lighted so that employees could see where they were stepping when getting supplies; and in failing to keep the supply-room in a reasonably safe and clean condition; that, by reason of the negligence of each of the defendants, decedent received the injuries which caused his death. The defendants each answered separately with a general denial.

The legality of a partnership between a corporation and an individual, such as is set out in this case, may well be questioned. We think the rule is quite well settled that, in the absence of express power in its charter, a corporation has no authority to enter into a partnership with a

48

natural person. 1 Morawetz, Private Corporations (2d ed.) sec. 421; *Gunn v. Central Railroad,* 74 Ga. 509; *Central R. & Banking Co. v. Smith,* 76 Ala. 572; *Whittenton Mills v. Upton,* 10 Gray (Mass.) 582, 598; *Sabine Tram Co. v. Bancroft & Sons,* 16 Tex. Civ. App. 170. We deem it, however, unnecessary to decide this point, for the reason that the judgment below must be affirmed upon the merits.

There is no conflict in the evidence. The contract between Hayden Brothers Company and defendant Reum was in writing and is set out in full in the abstract. An examination of it shows that the corporation had no interest whatever in the profits and was in no manner liable for any of the losses sustained by Reum in the conduct of his meat business. It shows that the corporation leased to Reum certain space in its building in which to conduct his meat market, which space included the room where decedent received his injury. In addition to the space furnished, the company was to furnish light and heat. As a consideration for these concessions, Reum was to pay the company 7 per cent. of the gross receipts of his business, and was to expend a sum equal to 2 per cent. of his gross sales in advertising his department. The company furnished two cashiers for the department, with cash registers. All the moneys taken in were turned over to these cashiers. At the close of business each day Reum would read the machines, and the cashier would then take the money and turn it over to the company. From the money thus received the company would deduct its 7 per cent., and pay the balance over to Reum whenever he demanded it, which could be every day, but was usually two or three times a week. Reum bought his own stock and paid for it himself. He kept his own bank account, hired all his help, and paid them their salaries. Reum had 2 delivery wagons and the company had 15 or 20. All were lettered "Hayden Brothers." The two wagons owned by Reum were used for hauling his invoices from the depot to the store and for delivering down-town sales, while his sales in the

outlying portions of the city were delivered in the company's wagons. The advertising matter in the newspapers read: "Hayden Brothers Meat Department, Martin Reum, Manager." These advertisements did not always appear in connection with Hayden Brothers' general advertisements, but often appeared in some other place in the newspaper, and, so far as the evidence shows, they were paid for by Mr. Reum, probably out of the 2 per cent. of gross sales required of him by his contract. We see nothing in any of these facts to established a partnership between Hayden Brothers Company and Mr. Reum. The contract between them amounted to nothing more than the renting of floor space to Reum by the company for a rental of 7 per cent. of his gross sales. This was a fixed and certain rental, in no manner dependent upon the question of whether Reum was conducting the business at a profit or a loss. We therefore hold that no partnership is shown.

There is nothing in the evidence to show that Hayden Brothers Company had or attempted to exercise any control of the storeroom where the accident occurred. This room opened off from the meat salesroom, separated by a partition which extended from the floor to within a few feet of the ceiling. Incoming stock was received and unpacked in this storeroom. The work of unpacking was done by the employees of the meat department, of which decedent was one. When the boxes and barrels were opened, the boards were not at once removed, nor were they piled up with any care by the men. They were allowed to accumulate for days at a time, and sometimes would so obstruct the room that the men, including the decedent, would go out and have a partial cleaning up. The sausage grinding was done in this room. The employees of the salesroom also used the room as a cloakroom. When the noon hour arrived on the day of the injury, decedent went into the room to lay off his meat-cutting clothes and put on his street clothes, in order to go to his noonday meal. While crossing the room to where his garments were, he stepped upon a nail protruding from

a board, and received the injury, set out in the petition, from which he died.

When plaintiff rested, separate motions were made by the defendant company and defendant Reum to direct a verdict in their favor for various reasons, one of which was that there was no evidence to show actionable negligence against the defendants. The district court properly sustained the motions. We are unable to discover any theory upon which a verdict for the plaintiff could have been sustained.

The judgment is therefore

AFFIRMED.

Barnes, Letton and Sedgwick, JJ., not sitting.