Merritt v. Johnston.

ROY C. MERRITT, APPELLEE, V. JOSEPH JOHNSTON, APPELLANT.

FILED MARCH 12, 1923. No. 22253.

1. **Contract:** CONSTRUCTION. The agreement sued on and set forth in opinion construed, and *held* a contract of employment, and not one of partnership.

2. **Trial:** ACCOUNTING: TRIAL TO JURY. Suit upon a contract of employment to recover the stipulated compensation named therein for services performed, even though said compensation or part thereof consists of a certain per cent. of the net income of defendant's business, is triable primarily before a court and jury, and neither party is entitled, as matter of right, to have the case transferred to a court of equity, unless it should manifestly appear that the issues and items therein are so numerous and the evidence to sustain them so variant, technical and voluminous that a jury is

incompetent to deal intelligently with them and come to a just conclusion.

3. ——— : ——— : ———. Issues and evidence examined in the case at bar and *held* the trial court did not err in overruling defendant's motion to transfer the case to an equity court.

APPEAL from the district court for Douglas county: L. B. DAY, JUDGE. *Affirmed.*

*Gaines, Van Orsdel & Gaines,* for appellant.

*Harland L. Mossman, contra.*

Heard before MORRISSEY, C. J., ALDRICH, DAY and GOOD, JJ., TROUP, District Judge.

TROUP, District Judge.

Plaintiff brought his suit at law to recover from defendant an alleged balance due him for compensation as manager of defendant's business, under a certain written contract set forth in his petition, wherein it is stipulated that plaintiff was to receive for his services $150 a month, and in addition thereto one-half of the net income from the business. Plaintiff alleges he entered defendant's employment on September 26, 1918, and remained until November 18, 1920, during which time he drew $150 a month and in every way fulfilled his part of the agreement; that the net income of the business, during the time aforesaid, amounted to $15,-936.63; that plaintiff received from defendant on account thereof the sum of $1,195, and no more, and that there remains due him the sum of $7,145.81, for which he prays judgment.

Defendant, answering, admits the contract set forth in the petition; that plaintiff entered employment of defendant thereunder, as stated, and so continued to November 18, 1920, at which time plaintiff, desiring to terminate said contract, offered to accept and thereupon was paid by defendant the sum of $1,200 in full settlement of any amounts that might be due him under said

contract.   Further answering defendant denies that the
net income of the business is as stated in the petition,
and avers that at the time of the settlement the net
income had not been ascertained, but that plaintiff,
having had full charge of the books, knew better than
defendant what the net income was.   Plaintiff's reply
denies all new matter in defendant's answer.

At the close of plaintiff's testimony the defendant
moved the court "to dismiss the jury and to refer the case
to the equity court, for the reason that the same, upon
the showing made by plaintiff, involves an accounting,
and hence is not proper to be submitted to the jury."
The motion was overruled; the trial proceeded with the
introduction of defendant's evidence; the case was sub-
mitted to the jury, and a verdict rendered for plaintiff
in the sum of $3,750.   Defendant appeals.

The first contention made by defendant is that the con-
tract between the parties hereto is one of partnership,
and not employment.   We cannot take that view of it.
The contract is as follows:

"This agreement, made this 26th day of September,
1918, between Joseph Johnston, doing business as the
Western Plumbing & Heating Company of Omaha,
Douglas county, Nebraska, and R. C. Merritt of Omaha,
Douglas county, Nebraska, Witnesseth:

"Joseph Johnston is the owner of a plumbing and
heating business which is conducted under the name of
the Western Plumbing & Heating Company, and is
desirous of obtaining the services of R. C. Merritt as
manager of said business, and R. C. Merritt is desirous
of accepting said employment.

"Joseph Johnston agrees to pay to R. C. Merritt for
his services the sum of $150 per month, and one-half
of the net income received from said business, after the
payment of all expenses, and after the payment of an
equal salary, to wit, $150 per month to the said Joseph
Johnston.

"It is further agreed that in the event of the withdraw-

al of said Joseph Johnston from the plumbing and heating business for any reason whatsoever, or upon the death of the said Joseph Johnston, R. C. Merritt in consideration of said services shall further have a right to continue to conduct said business under the name of Western Plumbing & Heating Company, and shall be from henceforth a joint owner with the said Joseph Johnston of said trade name.

"R. C. Merritt hereby agrees to accept said employment and agrees to devote his best energies and his time to the prosecution of said business and the management of the same.

"In witness whereof the parties have hereunto signed their names this 26th day of September, 1918.

"(Signed)  Joe Johnston.
"(Signed)  R. C. Merritt.
"(Signed) E. M. Owen, witness."

It would seem that a mere reading of the contract must convince one that it is but a contract for hire, pure and simple, and that the parties to the same must have had no other contemplation in view, except and until at least one or both of the contingencies mentioned in paragraph 4 of said contract should arise. Neither of these contingencies did arise. That the contract provided that part of the compensation to be received by the plaintiff for his services should be a certain portion of the net income of the business does not tend to render it any the less a contract for employment. *Aetna Ins. Co. v. Bank of Wilcox,* 48 Neb. 544; *Whitney v. Gretna State Bank,* 50 Neb. 438; *Agnew v. Montgomery,* 72 Neb. 9. Such a stipulation in a contract between master and servant is of frequent occurence and becoming more so every year, and is generally considered to be highly promotive of the interests of both employer and employed. Besides, the parties themselves have regarded the contract as one of employment only, as evidenced by their pleadings, the substance of which is above set forth; neither was a contrary view assumed by either

party at the trial.   In such a case ordinarily for that reason alone the court will be justified in adopting the construction given it by the parties.   *School District v. Estes,* 13 Neb. 52; *Paxton & Gallagher v. Smith & Co.,* 41 Neb. 56; *Fiscus v. Wilson,* 74 Neb. 444; *Jobst v. Hayden Bros.,* 84 Neb. 735.

The next position taken by defendant is that, even if the court should hold the contract to be not one of partnership, still the cause of action is of such a nature as that the only proper forum for its determination is a court of equity where an accounting may be had between the parties, and that the trial court erred in not sustaining defendant's motion to transfer the case to an equity court.   We do not believe this position is well founded.   This action does not call for an accounting. Certainly the defendant does not require one, for he makes no counter charges against the plaintiff in his answer and none arises in the evidence.   The action is simply one upon a contract, and its purpose is to recover for a breach thereof, that is, for a failure to pay a part of the compensation stipulated therein.   Primarily, therefore, this would be a law action cognizable for trial before a court and jury, and the mere fact that the compensation sued for consists of a portion of the net income of defendant's business, to determine which requires some examination of defendant's books of account, would by no means necessarily transform the case from one at law to one in equity.   *Lee v. Washburn,* 80 App. Div. (N. Y.) 410, and cases cited.

Before, if at all, a so-called "accounting", and a court of equity to handle the same, can be demanded in a case like the present one, it must appear that the issues and items are so numerous, complex and technical that it becomes apparent that a jury is unable to deal with it. As was said in the case of *De Bevoise v. H. & W. Co.,* 67 N. J. Eq. 472, wherein it appeared that plaintiff was to receive $2,000 a year salary and 25 per cent. of the net profits:

"To justify a bill in equity for an accounting, the issues must be so numerous, so distinct, and the evidence to sustain them so variant, technical and voluminous, that a jury is incompetent to deal intelligently with them and come to a just conclusion."

Such a situation is not present in the instant case. The defendant employed an expert auditor and accountant to go over his entire accounts with a view of showing just what was desired to be known by either party. Both plaintiff and defendant joined in aiding the accountant in this behalf, with the result that the accountant exhibited to the court and jury a complete, accurate, itemized, typewritten statement of just what the defendant's books showed in this regard and a deduction therefrom of what the net income was for the given time required; so that there was but little or no occasion for any material dispute to arise, and, as we view the evidence, but little or no material dispute did arise, except one pertaining to the correct inventory of defendant's stock, which arose as follows: After the audit was completed and the accountant had fully finished his work, the defendant intimated that the accountant had not taken the correct inventory of the stock as a basis for computation. The accountant stated that he had taken the only inventory which appeared in his books and the only one to which his attention had been called. Defendant stated that he had an inventory at home which defendant, his boy (13 years old), and two of his hired men had taken, and which was materially different and more favorable to defendant than the one taken by the accountant. The accountant stated to defendant that as a responsible public accountant he could not accept an inventory so casually arising and so lacking in authenticity, and the inventory employed by the accountant in the first instance was allowed to stand for the time being and remain as part of his audit. Nevertheless, at the trial the defendant was allowed to introduce the inventory referred to in

evidence and the jury and defendant had the benefit of what it purported to show.

The question of alleged settlement between plaintiff and defendant, as averred in defendant's answer, was likewise fairly submitted to the jury and the jury evidently found against the defendant on that issue. The jury returned a verdict for plaintiff for $3,750, but little more than half of what plaintiff claimed was due and considerably less than what the jury might have awarded under the evidence, and respecting which no complaint seems to be made by defendant, provided the contract in question is to be held one of nonpartnership, which we have decided it is.

We find no reason why the judgment of the lower court should not stand, and the same is therefore

AFFIRMED.